**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARIA L. COLON,

                         Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Civil Action No. 2:16-cv-02484-SDW

**OPINION**

March 17, 2017

**WIGENTON,** District Judge.

Before the Court is Plaintiff Maria L. Colon's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Kimberly L. Schiro's ("ALJ Schiro") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Schiro's factual findings are supported by substantial credible evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I.   PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

On February 7, 2012, Plaintiff applied for SSI (R. 173–79), alleging disability as of June 15, 2011, associated with lower back pain, neck pain, arm numbness, asthma, migraines, sleep apnea, anxiety, and depression.  (R. 46–74.)  Plaintiff's application was denied both initially and upon reconsideration.  (R. 112–16, 120–22.)  Plaintiff's subsequent request for a hearing before an administrative law judge was granted (R. 126–128), and a hearing was held before ALJ Schiro on June 26, 2014.  (R. 36.)  Plaintiff, as well as a vocational expert, appeared and testified at the hearing.  (R. 36–84.)  ALJ Schiro then issued a decision finding Plaintiff not disabled and denying Plaintiff's application for SSI on August 12, 2014.  (R. 17–31.)  On March 24, 2016, the Appeals Council denied Plaintiff's request for review of ALJ Schiro's decision, making it the Commissioner's final decision.  (R. 1–7.)  Plaintiff now requests that this Court reverse the Commissioner's decision and that Plaintiff be granted SSI benefits.  (Pl.'s. Br. at 30.)

### B.  Factual History

#### i.   *Personal and Employment History*

Plaintiff was 45 years old at the onset of her disability in 2011.  (R. 173.)  She completed 12th grade and was previously employed as a crossing guard and factory worker.  (Pls. Br. at 9.)  Plaintiff alleges that she became disabled due to the following medical impairments: "asthma, migraines and allergies."  (*Id.* at 2.)

#### ii.   *Medical History*

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to her disability claim.  (*See* R. 241–454.)  In addition, Plaintiff testified about her health during a hearing before ALJ Schiro.  (*See* R. 36–74.)  This Court summarizes the medical evidence below.

Plaintiff alleges that she has been unable to work due to physical and psychiatric ailments. (Pl.'s Br. at 2.)  Specifically, Plaintiff contends that she has symptoms related to asthma, migraines, allergies, knee pain, back pain, numbness, sleep apnea, and depression.  (Pl.'s Br. at 2–12.)  On December 14, 2011, Plaintiff visited Pulmonary & Critical Care, where she was seen by Joyce Nkwonta, M.D. ("Dr. Nkwonta").  (R. 291.)  Dr. Nkwonta noted hypertriglyceridemia, bronchitis, and rhinitis as active problems.  (*Id.*)  Plaintiff returned to Pulmonary & Critical Care on January 18, 2012, where additional active problems, such as extrinsic asthma with status asthmaticus, allergic rhinitis, and hypersomnia with sleep apnea, were noted.  (R. 293.)  Additionally, throughout 2012 and 2013, Munirih Tahzib, M.D. ("Dr. Tahzib") also treated Plaintiff for her allergies and asthma.  (R. 349–62.)  Dr. Tahzib often noted that Plaintiff was "coughing profusely" and/or had a "chronic cough." (*Id.*)  A chest x-ray ordered by Dr. Tahzib indicated that Plaintiff did not have acute cardiopulmonary disease.  (R. 375.)

In a medical report dated February 14, 2012, in response to the state agency's request, Dr. Nkwonta indicated that Plaintiff had a history of asthma and dermatitis, but declined to offer her opinion on Plaintiff's ability to do work-related activities.  (R. 262–63.)  In a later form to the state agency, dated March 30, 2012, Dr. Nkwonta reported that she was not treating Plaintiff for any "psych" problems and that Plaintiff had not reported to her any panic attacks, depression, or instances of hearing voices.  (R. 260.)  Dr. Nkwonta described Plaintiff's mood during visits as appropriate.  (*Id.*)

On April 8, 2012, F. Ahmed, M.D. ("Dr. Ahmed") conducted a physical examination at the request of the state agency.  (R. 278–81.)  Dr. Ahmed noted the following:

> She [is] unable to extend her right knee fully because of pain.  Tone is normal. Sensation to light touch and pinprick is intact.  DTRs are 1+ all over in the upper and lower extremities.  Plantars are downgoing.  Gait, she walks slowly with limp favoring her right lower extremity.  She does not use a cane or assistive devise.

(R. 280.) Dr. Ahmed's examination of Plaintiff's musculoskeletal system determined that Plaintiff had tenderness in the cervical area, lumbosacral spine area extending to the right hip, and in the right knee. (*Id.*) On July 14, 2012, Plaintiff visited Iqbal Ahmad, M.D. ("Dr. Ahmad") where Plaintiff noted the injury to her neck, back and right knee from a car accident. (R. 403.) On April 12, 2013, Plaintiff visited Paul Barbaza, M.D. ("Dr. Barbaza"), from JFK Family Medicine ("JFK"). (*See* R. 445.) The medical report indicated that Plaintiff was asymptomatic but "want[ed] disability." (R. 445.) Then, on May 14, 2013, Plaintiff revisited Dr. Ahmad and complained of discomfort and pain in her right knee. (R. 404.) Dr. Ahmad diagnosed Plaintiff with spinal disc disease, internal derangement of right knee, and arthritis. (R. 406.) He indicated that Plaintiff would "in all probability need further medical treatments in the future." (R. 406.)

Ravjot Sodhi, M.D. ("Dr. Sodhi") from JFK evaluated Plaintiff on July 3, 2013, and noted that Plaintiff had no headaches nor shortness of breath, but that she was using a walking cane and right knee brace. (R. 449.) Plaintiff reported that she had constant back and right knee pain. (*Id.*) A physical and psychological exam was performed in which Plaintiff had: a normal respiratory effort, regular heart rate and rhythm, normal coordination, no deformity or scoliosis noted with normal posture, tenderness to palpation in region of L5, normal mood and affect, normal attention span and concentration, and "no noted internal preoccupation, flight of ideas, looseness of associations, or tangentiality of thought." (R. 450–51.) Plaintiff then returned to JFK on August 2, 2013, for a follow-up visit with Dr. Sodhi. (R. 440.) Dr. Sodhi's medical report indicated that Plaintiff had laser back surgery and right knee surgery in 2003, but her pain was controlled with Advil and Tylenol. (R. 442.) In addition, Dr. Sodhi noted that Plaintiff's sleep apnea was stable and that she used a CPAP machine every night. (R. 443.) Plaintiff's other problems included asthma, migraines, and hypertriglyceridemia. (*Id.*)

In an examination report for the State of New Jersey Division of Family Development, dated March 26, 2014, Jeremy Law, M.D. ("Dr. Law") indicated that Plaintiff needed knee replacement surgery.  (R. 399.)  He also opined that Plaintiff's inability to work would last approximately from March 7, 2014, to June 6, 2014.  (*Id.*)  Thomas St. John, M.D. ("Dr. St. John") from JFK ordered an MRI of Plaintiff's right knee on April 24, 2014.  (R. 410.)  The report indicated that Plaintiff had a small popliteal cyst, mild chondromalacia, and fluid within the prepatellar bursa.  (*Id.*)  On June 18, 2014, Philip Glassner, M.D. ("Dr. Glassner"), another physician at JFK, ordered a lumbar spine MRI which showed that Plaintiff had "degenerative changes with mild to moderate canal and foraminal stenosis at L5-S1.  (R. 417.)

Ernesto Perdomo, Ph.D. ("Dr. Perdomo") performed a complete mental status examination after referral from the state agency.  (R. 271–74.)  Dr. Perdomo found that Plaintiff's thought process was well organized and focused, her mood and affect were depressed and anxious, her concentration was fair, and her association and abstraction abilities were poor.  (R. 272–73.)  Dr. Perdomo diagnosed her with recurrent major depression, panic attack with agoraphobia, posttraumatic stress disorder, and personality disorder.  (R. 273.)

Jyosthsna Shastry, M.D. ("Dr. Shastry"), a state agency physician, reviewed Plaintiff's medical record, and determined that Plaintiff could: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for four hours; and sit (with normal breaks) for about six hours in an eight-hour workday.  (R. 93.)  Dr. Shastry also determined that Plaintiff was unlimited in her ability to balance, could frequently stoop, and could occasionally climb, kneel, crouch, and crawl.  (*Id.*)  David Schneider, M.D. ("Dr. Schneider") affirmed Dr. Shastry's evaluation of Plaintiff. (R. 106–08.)

Joan Joynson, Ph.D. ("Dr. Joynson") assessed Plaintiff's mental residual functional capacity and determined that Plaintiff was not significantly limited in her ability to: carry out very

short and simple instructions; carry out detailed instructions, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions.  (R. 95.)  Dr. Joynson, however, found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and that she was moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 95.)  Ellen Gara, Psy.D. ("Dr. Gara") affirmed Dr. Joynson's evaluation of Plaintiff.  (R. 108–09.)

### 2. Function Report

Plaintiff submitted a function report dated February 14, 2012, in support of her SSI claim. (R. 205.)  Plaintiff stated that her daily activities consist of eating breakfast, lunch and dinner, taking a bath, listening to music, and watching television.  (*Id*.)  Plaintiff also stated that she cares for her pets on her own and her medical conditions do not affect her personal care capabilities.  (R. 206.)  Furthermore, Plaintiff reported that she is able to prepare her meals daily and is able to do the laundry, iron, and clean with assistance.  (R. 207.)  Plaintiff also reported that she drives, but does not go out alone because she needs help with "certain things."  (R. 208.) Moreover, Plaintiff gets along well with authority figures and spends time with others everyday.  (R. 209–211.) Additionally, Plaintiff stated that she handles changes in routine fine, but gets "depressed [and] frustrated" when handling stress.  (R. 211.)

### 3. Hearing Testimony

At the hearing before ALJ Schiro on June 26, 2014, Plaintiff testified about her previous employment, daily activities, debilitating conditions, and medication/treatment.  (*See* R. 36–74.)

Although Plaintiff referenced her mental health ailments that contributed to her request for SSI, her testimony centered on her physical ailments.  (*Id.*)

Vocational expert Rocco Meola ("Meola") also testified at the hearing and stated that someone with Plaintiff's limitations would be unable to perform her past work as an assembler of notebooks and a crossing guard.  (R. 75–76.)  However, Meola also testified that there existed representative jobs in the national economy that a person such as Plaintiff could perform.  (R. 76.)  Such jobs included document prep worker, a scale operator, and a preparer.  (R. 76–77.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at

*2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind

of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's

"physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work,

considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

ALJ Schiro applied the Five-Step Disability Test to the facts comprising Plaintiff's application for SSI and determined that Plaintiff was not disabled under the relevant portions of the Social Security Act.  (*See* R. 20–31.)  Specifically, she determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (R. 22, 30 (citations omitted).  These factual findings are supported by substantial credible evidence in the record.

At step one of the disability analysis, ALJ Schiro properly found that Plaintiff had not engaged in SGA since February 7, 2012, the alleged onset date of Plaintiff's disability.  (R. 22); *see* 20 C.F.R. §§ 416.971 *et seq.*  Accordingly, she proceeded to step two to determine what, if any, severe impairments Plaintiff suffered.  *See* 20 C.F.R. § 416.920(a)(4)(ii).

At step two, ALJ Schiro properly considered the entire medical record in finding that Plaintiff suffered from the following severe impairments: "asthma, a history of polysubstance dependence, major depression, a history of a motor vehicle accident with internal derangement and surgical repair of the right knee, right knee bursitis, chondromalacia and popliteal cyst,

degenerative changes of the spine, sleep apnea and headaches." (R. 22); *see* 20 C.F.R. § 416.920(c). ALJ Schiro found that these severe impairments "significantly limit [Plaintiff's] mental and physical abilities to do one or more basic work activities." (R.22.) In addition, "[Plaintiff's] impairments have lasted at a 'severe' level for a continuous period of more than 12 months." (*Id.*) The findings of severe impairments are supported by substantial evidence in the record. Once ALJ Schiro determined which of Plaintiff's impairments qualified as "severe," she considered, under step three, whether Plaintiff's severe impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 416.920(a)(4)(iii).

At step three, it was properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. 22.) Specifically, ALJ Schiro found that Plaintiff failed to meet the pulmonary function test requirements of listing 3.02 involving "Chronic Pulmonary Insufficiency." (R. 23.) ALJ Schiro also found that listing 3.03 involving "Asthma" was not met because Plaintiff did not have "attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every [two] months or at least six times a year[.]" (R. 23.) Next, the ALJ adequately determined that the requirements of listing 1.02 were not met because Plaintiff did not provide "evidence of a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint with involvement of one major peripheral weight-bearing joint, resulting in the inability to ambulate effectively, as defined in 1.00B2b." (*Id.*)

ALJ Schiro also correctly found that listing 1.03 requirements were not satisfied because there was no evidence that Plaintiff had "reconstructive surgery or surgical arthrodesis of a major

weight-bearing joint with an inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is expected to occur within 12 months of onset." (*Id.*) She found that the listing 1.04 requirements were not met because Plaintiff did not demonstrate that her nerve root or spinal cord was compromised along with the requirements of A, B, or C of listing 1.04. (*Id.*) ALJ Schiro then determined that Plaintiff's sleep apnea complaints did not meet the clinical requirement of listing 3.10, because Plaintiff failed to demonstrate evidence of "chronic cor pulmonale (3.09) or an organic mental disorder (12.02)[.]" (*Id.*)

In addition, it was determined that Plaintiff's mental impairments did not meet the severity requirements set forth in listings 12.04 and 12.09. (*Id.*) ALJ Schiro was correct that the Paragraph B requirements were not satisfied because Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. (R. 23); *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. In reaching this conclusion, the ALJ found that Plaintiff only has mild restriction in daily living. (R. 23.) In addition, ALJ Schiro cited to evidence and stated that Plaintiff "is able to independently manage her personal care, live alone, take care of her pet birds and fish, prepare meals on a daily basis, drive a car, shop in stores, manage money, watch television and spend time with others on a daily basis." (*Id.*) (citations omitted.) She also found that Plaintiff only has moderate difficulties in social functioning and cited to Plaintiff's allegations that she has panic attacks, giving her the benefit of the doubt that she might have difficulty constantly interacting with others. (R. 24.) However, ALJ Schiro properly determined that Plaintiff failed to provide evidence that "she could not work in an environment with no contact with the public and no more than occasional contact with co-workers and supervisors." (*Id.*)

Next, the ALJ determined that Plaintiff has only moderate difficulties with regard to concentration, persistence or pace, citing to the record that Plaintiff's "short-term memory was

fair-to-mildly impaired; her concentration and long-term memory were fair; and her intelligence appeared to be within the low average range." (*Id.*) Nevertheless, ALJ Schiro concurred with the assessment of the DDS psychological consultants who found that Plaintiff was able to sustain concentration, persistence and pace for simple work tasks. (*Id.*) Lastly, the ALJ found that the record reflects that Plaintiff has not experienced any episodes of decompensation lasting for an extended duration. (*Id.*) ALJ Schiro also found that the evidence failed to establish the presence of Paragraph C criteria. (*Id.*)

Therefore, it was correctly determined that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, Plaintiff was not disabled under the step three analysis, leading to step four to determine whether Plaintiff can perform any of her past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e).

Before undergoing the analysis in step four, Plaintiff's RFC was determined. (R. 24–29); *see* 20 C.F.R. §§ 416.920(e), 416.945. ALJ Schiro properly concluded that Plaintiff has the RFC to "perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally climb, balance, kneel, stoop, crouch, and crawl." (R. 24.) After extensive review of the record, ALJ Schiro found, specifically, that Plaintiff has the following limitations: "[s]he requires a cane for ambulation[;] [s]he cannot have concentrated exposure to temperature extremes, wetness, humidity, fumes, dusts, gases and poor ventilation[;] [she cannot have] direct contact with the public; [s]he cannot reach overhead with the right upper extremity[;] [s]he needs to alternate positions from sitting to standing every thirty minutes." (*Id.*) In making this determination, the ALJ considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p. (R. 25.) She also considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(*Id.*)  In support of her finding, ALJ Schiro cited to Plaintiff's testimony, the treatment and evaluative records of Pulmonary & Critical Care, Dr. Ahmed, Dr. Perdomo, Dr. Nkwonta, and the state agency medical and psychological consultants.  (*See* R. 25–29.)

In light of the substantial evidence reviewed, this Court finds that Plaintiff's RFC was properly determined.   ALJ Schiro's findings are supported by the credible medical evidence, as the ailments alleged by Plaintiff failed to rise to the level of the disability regulations.  Plaintiff's subjective complaints were acknowledged, but the medical treatment did not support such complaints.  ALJ Schiro, therefore, adequately determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (R. 27.)

After determining Plaintiff's RFC, at step four it was found that Plaintiff cannot perform her past relevant work under 20 C.F.R. § 416.965.  (R. 29.)  ALJ Schiro determined that Plaintiff cannot work as an assembler and a crossing guard based on Plaintiff's RFC for sedentary work, particularly considering Plaintiff's limitations on standing and walking.  (*Id.*)  Because it was determined that Plaintiff cannot perform any of her past relevant work, ALJ Schiro continued to step five to determine whether there exists work in the national economy Plaintiff could perform. *See* C.F.R. §§ 416.920(a)(4)(v), 416.920(f), 416.920(g)(1).

At step five, the ALJ properly found that Plaintiff can perform work that exists in significant numbers in the national economy.  (R. 30); *see* 20 C.F.R. §§ 416.969, 416.969(a).  She considered Plaintiff's age, education, work experience and RFC, as well as the vocational expert's testimony.  (R. 30.)  The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a document prep worker, scale operator, and a preparer.  (*Id.*)  Thus, ALJ Schiro's factual findings that Plaintiff is capable of performing work that exists in significant numbers in the national economy are supported by substantial credible

evidence.  Accordingly, it was correctly determined that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act.  (R. 31); *see* 20 C.F.R. §§ 416. 920(a)(4)(v), 416.920(g).

## **CONCLUSION**

Because this Court finds that the factual findings were supported by substantial credible evidence in the record and the legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Parties

16